# EXHIBIT A

Xiao yan Ta□ a
P.O. Box 92
Menlo Park, CA 94026
soavegles@gmail.com
(6□) 319 3126

**THE SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN MATEO**

**FILED**
SAN MATEO COUNTY

JUN 2 2 2017

Clerk of the Superior Court
by _____
DEPUTY CLERK

XIAOYAN TANG,

        Plaintiff,

        v.

THE ROYAL BANK OF SCOTLAND GROUP
(a/k/a RBS); RBS CITIZENS, N.A.; CITIZENS
FINANCIAL GROUP; RBS CITIZENS ASSET
FINANCE NATIONAL WEST; CITIZENS
COMMERICAL BANKING (a/k/a CITIZENS
RESTUANT FINANCE); CITIZENS BANK
(a/k/a CITIZENS BANK, N.A., a/k/a
CITIZENS, N.A. a/k/a CITIZENS, a/k/a RBS
CITIZENS, N.A.); and Does 1-10,

        Defendants.

17 – CIV – 02787
CMP
Complaint
567250

17C I V 02787

## COMPLAINT

1.      Plaintiff XIAOYAN TANG ("Plaintiff," "she," and "her"), an individual, hereby

sues Defendants, including DOES 1-10, and each of them, for:

1.      Defamation
2.      Wrongful Termination In Violation Of State Law
3.      Wrongful Termination In Violation Of Equity And Public Policy
4.      Intentional Infliction Of Emotional Distress
5.      Negligent Infliction Of Emotional Distress
6.      Negligent Negligent Failure To Supervise
7.      Negligent Failure To Adhere To Public Policy
8.      Breach Of Implied Contract
9.      Breach Of The Implied Covenant Of Good Faith And Fair Dealing
10.    Breach Of Fiduciary Obligations

11.     Fraud/Misrepresentation
12.     Common Law Promissory Fraud/Promissory Estoppel/Fraudulent Inducement
13.     Equitable Relief For Promissory Fraud/Promissory
        Estoppel/Fraudulent Inducement
14.     Intentional Interference With Contractual Relations
15.     Harm To Business Reputation/Intentional Interference With Prospective
        Economic Relations/Advantage
16.     Harm To Business Reputation/Negligent Interference With Prospective
        Economic Relations/Advantage

A <u>JURY TRIAL</u> IS REQUESTED FOR ALL JURY TRIAL-ELIGIBLE CAUSES OF ACTION

## <u>BACKGROUND ALLEGATIONS (VENUE)</u>

2.     Plaintiff is informed and believes, and thereon alleges, that each organization/entity Defendant herein ("entity Defendant/s") is a business or government organization, form unknown, doing business in the State of California, and an agent with respect to, or under the control of each other Defendant - or said entity Defendant.

3.     Plaintiff is informed and believes:

    a.   Entity Defendant Royal Bank of Scotland (RBS), headquartered in Edinburgh, United Kingdom, operates business in the State of California, including maintaining a business location in San Francisco, CA.

    b.   Entity Defendant RBS Citizens and Citizens Financial Group (CFG) (commonly known as Citizens Bank), headquartered in Providence, Rhode Island, run business and maintain business locations in the the State of California.

    c.   Entity Defendant RBS Citizens Asset Finance National West operates business in the State of California, including maintaining a business location in Irvine, CA.

    d.   Entity Defendant Citizens Commercial Banking (a/k/a Citizens Restaurant Finance) operates business in the State of California, including maintaining a business location in Irvine, CA.

4.    The employment contracts/understandings were made and to be performed in Massachusetts. Notwithstanding, Defendants' tortious or illegal conduct extended beyond Massachusetts, particularly post-termination, and continues in California, prompting Plaintiff to seek legal remedy.

5.    Plaintiff resides and is domiciled in San Mateo County, California post – termination.

6.    Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, individually and in conspiracy, unlawfully acted to, and did, defraud and otherwise damage Plaintiff, as recounted herein, in the State of California.

7.    Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-10, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8.    Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is also responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages were also proximately caused by them.

9.    As a result of the unlawful, wrongful, fraudulent, and despicable conduct of Defendants and each of them, including DOES 1-10, individually and in conspiracy, recounted herein, Plaintiff has been damaged in an amount in excess of this Court's jurisdictional minimum, and seeks recompense therefor, including punitive damages and attorney fees, in amounts according to law, and proof at trial - in addition to injunctive relief.

10.    Defendants engaged in their conduct injurious to Plaintiff, as recounted herein, with malice, oppression, or fraud.

11.    Accordingly, Plaintiff seeks punitive damages in addition.

## ADDITIONAL BACKGROUND ALLEGATIONS
## GIVING RISE TO LIABILITY

12.    The Complaint addresses causes of action addressing and accruing from facts up to the time of this state complaint. Unless otherwise noted, each cause of action also

encompasses and responds to tortious or illegal damage after the wrongful termination –
for example, the continuing refusal of Defendants to stop implying or expressly
defaming Plaintiff, harming her business reputation, and intentional/negligent inference
with prospective economic relations.

13.     Plaintiff was induced to join Defendants in October 2007 as an employee working
as a Portfolio Manager, by express and implied promises that she would be treated fairly,
and, impliedly, that if she was sexually harassed by a boss of hers, she would be treated
fairly, and not be fired unfairly with respect to the matter, including in re its reporting by
her.

14.     Supported by Defendants, in June 2010, Plaintiff transferred to Defendant's
Technology Banking Group managed by David Nackley.

15.     She was indeed sexually harassed by her boss, David Nackley, including by his
pronouncement to her, in a room with only the two of them present, that he demanded
that their relationship be characterized by the word, "assume," which he said could be
broken down into three other words - which, he said, were, "ass," "(yo)u," and "me."

16.     He actually showed Plaintiff a piece of paper which said that - a piece of paper
which Defendant Nackley later hid or destroyed (= consciousness of guilt).

17.     During this closed-door session where explicit sexual demands were made,
Defendant Nackley stared at Plaintiff's private areas for significant periods of time.

18.     Said behavior - while he was emphasizing his career and immigration power over
Plaintiff - inspired very reasonable fear in Plaintiff - and constituted emotional distress.

19.     He also told Plaintiff that, despite having a wife and children, he also had two
Thai house girls at his home, which was also intended to suggest to Plaintiff that she had
better be "smart".

20.     He also complained that the bathing suits of his Thai house girls did not reveal
enough of their bodies, and asked Plaintiff about her bathing suits attire.

21.     He tried to "groom her" by "suggesting" where she might find men.

22.     All this was in a meeting called by him to supposedly review her performance.

23.     There was no discussion of her performance – save for his making clear that he
expected sexual performance from Plaintiff, and that he had great control over her career

and immigration status.

24. His meaning and manner were unmistakably clear, including staring at her privates: he was requesting sex from the employee.

25. He also - in a jealous, even intimidating, assaultive manner - forced Plaintiff to disclose whom she was dating, which was also sexual harassment.

26. On that occasion, he prevented her from leaving that room.

27. He said she could not leave until/unless she told him who she was dating, etc..

28. In combination with a demanding demeanor, this was false imprisonment.

29. He concocted an excuse for asking her this.

30. He commandingly/forcefully in manner waved his arms in Plaintiff's direction.

31. He moved toward Plaintiff, including as he spoke, while waving his arms in such fashion, and constituted assault and emotional distress.

32. He threatened that he would kick Plaintiff out of the bank if she refused to tell right away.

33. He also threatened that Plaintiff was "being watched."

34. He also discriminatorily pronounced words to the effect that Asian women were supposed to be "obedient" - and "not argue."

35. Plaintiff is an Asian woman, of Chinese descent – which was well known to Defendants at all relevant times herein.

36. All of the above happened in a manner which explains and reveals his intent: that he requested and was expecting sex from this employee.

37. Plaintiff declined his advances.

38. There followed, by Defendants, sham markdowns of her performance, sham investigation of her internal complaint, and, overall, considerable hostility against this employee.

39. Even some female members of Human Resource and female co-worker acted in support of a higher level male sexual predator.

40. For example, they pretended to "investigate" the matter – which was sham behavior in support of sexual predator Nackley.

41. Defendants did wrongfully, unlawfully, unjustly, and tortiously fire her in June

2011, as a result of her respectfully informing HR of her complaint against Nackley, and her declining to accede to his requests, supported by career and immigration threats, that she have sex with him – or else….

42.     Plaintiff was wrongfully fire, by Defendants' false statements of fact regarding her performance, despite her solid job performance, including her work product being accepted and utilized by top management, to the benefit of the entity Defendant.

43.     Nackley, after Plaintiff's wrongful termination, was also forced to leave the entity Defendant.

44.     This solid job performance of Plaintiff – deserving of excellent references never given - was also evidenced by the employer's decision to sponsor Plaintiff for further work visa purposes not long before her termination, and by Plaintiff's being given some substantive assignments not long before her termination.

45.     In the course of same, Nackley ordered Plaintiff to "Shut your mouth!"

46.     He also stated that "You are different," regarding how her performance was to be measured by him.

47.     He forced Plaintiff to acknowledge and accept his sham performance review of her, even pursuing her to do so, despite Plaintiff's reasonable objection.

48.     This was after the "assume" words of her boss, and this sham review was part of the sexual harassment and its cover-up component.

49.     Indeed, the firing of Plaintiff was also part of the sexual harassment, and an attempt to cover up and get rid of the evidence of that illegal harassment.

50.     Plaintiff was terminated in such a manner as to be stigmatizing to her reputation and by Defendants' fabricated, untruthful charges against her regarding her performance.

51.     This final adverse performance review was despite Plaintiff's being assigned increased responsibilities, including some important projects.

52.     This bad treatment was contra to what she had been led to believe would be the case with that employer if her performance was solid – which it was.

53.     Defendants defamed Plaintiff by, Inter alia, placing false materials and making false statements as allegations of facts in her personal file, intentionally/negligently

damaging her career.

54.     Despite her excellent abilities and credentials, which include a Master's Degree in Finance from Boston College, Plaintiff has been unable to find comparable employment in her field of expertise, despite diligence on Plaintiff's part.

55.     This was proximately caused by Defendants' bad conduct.

56.     Defendants' bad conduct has ruined her career.

57.     Defendants' bad conduct has also caused Plaintiff serious emotional distress and unnecessary and uncalled-for life stress, including great and sustained worry.

58.     As a result, she has also suffered serious physical symptoms.

59.     Defendants knew or had reason to know that this proximately caused harm was likely when they fired Plaintiff, due to their knowledge that she was about 40 when about to be fired by said Defendants.

60.     Defendants also knew that there unlawful treatment of Plaintiff would be likely to seriously injure her career and child prospects for the future, and it has.

## THE FURTHER FACTS

61.     When it acted illegally, including tortiously and inequitably, Defendants were well aware that their acts and omissions, including post-termination, were calculated to job-savage the mid-career Plaintiff.

62.     Moreover, including each day in the post-wrongful termination, Defendants savaged Plaintiff additionally, by refusing to set the record straight and reiterating the impression that Plaintiff had been rightfully terminated. This additional defamation was effected by, inter alia, Defendants' refusal to provide excellent references for Plaintiff – which Plaintiff had clearly earned – well-known to even upper management – which knowingly used her work product approvingly on a number of occasions.

63.     These subsequent illegalities have further devastated Plaintiff - with great malice on the part of Defendants.

64.     Defendants have been cashing paychecks month after month inappropriately, while Plaintiff's life, as a result of their acts and omissions, has been grievously injured.

65.  Bank executive Robert C. Rubino, the then boss of David Nackley, participated in the discussions of terminating the Plaintiff, in addition to actually performing the firing ceremony, including directing others to seize her belongings and keep them from her (conversion and intentional infliction of emotional distress).

66.  Rubino had deemed Plaintiff's work product to be excellent.

67.  He clearly knew Plaintiff had consistently performed well.

68.  He previously disciplined Nackley for similar sexual misconduct prior to Plaintiff's joining Nackley's group.

69.  However, to protect bank executives' mutual benefits, he chose to illegally fire Plaintiff, rather than immediately punish the caught among them sexual predator, David Nackley.

70.  If he "had no idea" that his report Nackley had such interests as advancing sex from subordinates, then he was negligent in not adequately supervising Nackley – and incompetent to serve in any position of responsibility.

71.  Rubino had admitted that he did not have knowledge regarding a specific "negative" performance issue of Plaintiff that Nackley had claimed, but Rubino terminated Plaintiff.

72.  Nackley had admitted that he did not have knowledge regarding his own allegations of Plaintiff's performance issue, which had caused him to request the termination of her.

73.  Both Rubino's and Nackley's behavior was outrageous, tortious, and illegal.

74.  Defendants created untruthful claims, repeatedly making, circulating, and publishing false statements of fact to multiple parties to purposely and intentionally cause harassment, injury, and to harm Plaintiff, and constituted her emotional distress.

75.  Her firing and the accompanying defamatory personal file have ruined her career and have fatally damaged her child prospects for the future at her such a critical phase of a mid-aged woman.

76.  Defendants continue to defame her and continue their refusal to correct the record regarding Plaintiff's excellent performance while employed by them.

77.  This continuing refusal is being perpetrated on Plaintiff as she continues to live in

California.

78.     Plaintiff has applied for more than 900 jobs and has been working on a contractual basis post-termination. She is ineligible for rehire, despite Defendants' hiring for the same Portfolio Manager position, as Plaintiff held with entity Defendant, in California.

79.     Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and intentional/negligent inference with prospective economic relations.

80.     Even after the unlawful termination, Defendants' conduct, including continuously defaming her, internet or other stalking of Plaintiff, was a substantial factor in harming Plaintiff's chances of gaining equivalent or better employment, proximately causing Plaintiff harm, including financial, emotional, and physical damage.

81.     For all of the above reasons, Plaintiff hereby files this Complaint.


## CAUSES OF ACTION

### CAUSE OF ACTION 1

### DEFAMATION
(Plaintiff Against All Defendants)

3.     Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

4.     Defendants defamed Plaintiff by, Inter alia, creating untruthful claims, repeatedly making, circulating, and publishing false statements of fact to multiple parties to purposely and intentionally cause harassment, injury, and to harm her reputation.

5.     Defendants defamed Plaintiff by, Inter alia, by intentionally making false statements and untrue allegations of fact in her performance reviews.

6.     Plaintiff was terminated in such a manner as to be stigmatizing to her reputation and by Defendants' fabricated, untruthful charges against her.

7.     Defendants defamed Plaintiff by, Inter alia, placing false materials and making false statements as allegations of facts in her personal file, intentionally damaging her

career.

8.    Defendants, until present, have failed to correct records, apology, provide a reference or references recounting and documenting good, at minimum, performance – that Plaintiff had clearly earned.

9.    Defendants continue to defame her and damage her career. Plaintiff is bared from being rehired as a Portfolio Manager with entity Defendant in California.

10.    Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and intentional/negligent inference with prospective economic relations.

11.    Defendants knew or should have known that, especially for a female professional above 40, that was a killer for one having to seek a comparable or better job. This has ruined her career.

12.    Workplace defamation of character is considered a "proprietary" interest and thus is able to be brought in a suit by Plaintiff because it is not a personal injury claim and not covered by workers' compensation.

13.    Defendants' conduct, in addition to being tortious, violated and continues to violate California Code, Civil Code - CIV § 45.

14.    Defendants' conduct caused Plaintiff damage, for which Plaintiff seeks recompense herein.

15.    Defendants' conduct was a substantial factor in causing that harm.

16.    Plaintiff thereby, at minimum, sues Defendants and each of them for such harm.

17.    In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

18.    Plaintiff is therefore entitled to damages, including punitive damages, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

# CAUSE OF ACTION 2

## WRONGFUL TERMINATION IN VIOLATION OF
## STATE LAW
(Plaintiff Against All Defendants)

19.     Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

20.     Defendants terminated Plaintiff by, intentionally and purposely, creating untruthful claims and making false allegations of fact regarding her performance in order to protect a more senior employee – sexual predator.

21.     Defendants purposely concealed true facts regarding her termination and her sham performance reviews upon Plaintiff's discovering false allegations.

22.     Defendants' conduct, in violation of state law, caused Plaintiff damage, for which Plaintiff seeks recompense herein.

23.     Defendants' unlawfully, including tortiously, altered Plaintiffs' employment status unfavorably, particularly by firing her.

24.     Defendants' conduct was a substantial factor in causing that harm.

25.     Indeed, if Defendants followed law, damaged to Plaintiff might not have occurred.

26.     Plaintiff thereby, at minimum, sues Defendants and each of them for breach of this covenant, as well.

27.     In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

28.      Plaintiff is therefore entitled to damages, including punitive damages, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 3

## WRONGFUL TERMINATION IN VIOLATION OF

## EQUITY AND PUBLIC POLICY
### (Plaintiff Against All Defendants)

29.   Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

30.   There is and should be a public policy supporting the rule of law. This is evidenced by the laws and torts stated/recounted herein.

31.   Defendants violated such public policy.

32.   To establish a claim for wrongful discharge in violation of public policy, each of the following must be provided, and were present here:

     a.   An employer-employee relationship existed;

     b.   The employer terminated the employee (or took other adverse employment actions);

     c.   The termination was a violation of public policy;

     d.   The termination was a legal cause of the employee's injury; and

     e.   The employee suffered damages as a result of having been terminated.

       (Holmes v. General Dynamics Corp. (1993) 17 Cal.App.4th 1418, 1426.)

33.   Defendants' conduct caused Plaintiff damage from same, for which Plaintiff seeks recompense herein.

34.   Defendants' conduct was a substantial factor in causing that harm.

35.   Plaintiff thereby, at minimum, sues Defendants and each of them for violation of this law, as well.

36.   In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

37.   Plaintiff is therefore entitled to damages, including punitive damages, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 4

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Plaintiff Against All Defendants)

38.     Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

39.     Defendants intentionally created untruthful claims, repeatedly making, circulating, and publishing false statements of facts to multiple parties to purposely and intentionally cause harassment, injury, and to harm her reputation and damage her career.

40.     Defendants denied her promotions, pay raises, and bonuses that Plaintiff had earned by making up false allegations of fact regarding her performance.

41.     Defendants wrongfully terminated Plaintiff by creating untruthful claims and making false statements as allegations of fact in order to protect a more senior employee – sexual predator.

42.     The termination of Plaintiff was humiliating in that Defendants denied her access to her own belongings and seized her belongings and kept them from her.

43.     At the firing, Defendants intentionally intimidated Plaintiff by attempting to cause her deportation.

82.     The termination of Plaintiff was highly malicious as Defendants knew Plaintiff was above 40 years old. As a result, her firing and the accompanying defamatory personal file have ruined her career and have fatally damaged her child prospects for the future at her such a critical phase of a mid-aged woman.

44.     Defendants have failed to apologize, compensate, and corrected the record with respect to references well-earned by Plaintiff.

45.     Plaintiff has applied for more than 900 jobs and has been working on a contractual basis post-termination. She is ineligible for rehire, despite Defendants' hiring for the same Portfolio Manager position, as Plaintiff held with entity Defendant, in California.

46.     Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and intentional/negligent inference with

prospective economic relations.

47. Defendants' harassment and defamatory conduct violate state laws and public policies. Said conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected to occur in the workplace. Said conduct is separate from Workers' Compensation laws.

48. The conduct against Plaintiff of all Defendants was outrageous;

49. All Defendants intended to cause Plaintiff emotional distress;

50. All Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress;

51. Plaintiff suffered severe emotional distress; and

52. The conduct of all Defendants was a substantial factor in causing Plaintiff's severe emotional distress.

53. The emotional distress included suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and physical damages.

54. Serious emotional distress exists, and will continue, adversely affecting Plaintiff's health and emotional equanimity.

55. An ordinary, reasonable person would have been unable to cope with it.

56. In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

57. Plaintiff is therefore entitled to punitive and other damages in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 5

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Plaintiff Against All Defendants)

58. Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

59.     Defendants owed a duty to Plaintiff, inter alia, to provide a workplace free from unfair treatment, harassment, and defamation, and abused their positions of authority toward her.

60.     Plaintiff has applied for more than 900 jobs and has been working on a contractual basis post-termination. She is ineligible for rehire, despite Defendants' hiring for the same Portfolio Manager position, as Plaintiff held with entity Defendant, in California.

61.     Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and intentional/negligent inference with prospective economic relations.

62.     Said conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected to occur in the workplace. Said conduct is separate from Workers' Compensation laws.

63.     Defendants breached this duty as recounted herein.

64.     These breaches were the proximate cause of damages to Plaintiff, for which Plaintiff seeks recompense herein.

65.     In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

66.     As a part of her damages in this negligence action, Plaintiff also seeks damages for serious emotional distress, caused by Defendants, per, at minimum, Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, at p. 928.

67.     In respect of the serious emotional distress aspect, Plaintiff is or should be entitled to punitive damages as well.

68.     Plaintiff is entitled to punitive and other damages, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 6

## NEGLIGENT FAILURE TO SUPERVISE
### (Plaintiff Against All Defendants)

69.     Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

70.     The entity Defendant hired or otherwise engaged Nackley, inter alia, to act as a supervisor, including as the supervisor of Plaintiff, and he purported and acted to nominally, at least, do so.

71.     In so doing, Defendants owed a duty to Plaintiff, inter alia, that Plaintiff, its claimed "partner," be treated fairly.

72.     Defendants had some responsibility to monitor Nackley.

73.     Defendants not only have failed to properly supervise Nackley but have actively assisted him in his harassment and defamatory conduct towards Plaintiff.

74.     Even after the unlawful termination, Defendants' conduct, including continuously defaming her, internet or other stalking of Plaintiff by Nackley, was a substantial factor in harming Plaintiff, proximately causing Plaintiff harm, including financial, emotional, and physical damage.

75.     Plaintiff has suffered and will continue to suffer damages because of Defendants' inattention and carelessness.

76.     The injury to Plaintiff due to Defendants' negligence were foreseeable.

77.     Said Defendants breached this duty as recounted herein, by, inter alia, allowing this agent and coverup co-conspirator, to savage, defame, and otherwise damage Plaintiff, for which Plaintiff seeks recompense herein.

78.     At all relevant times recounted herein, Nackley purported to act and acted in this representative or agency capacity in dealing with Plaintiff and other employees.

79.     As a proximate result of Nackley's intentional or negligent unlawful acts and omissions, performed in the course and scope of his employment by, engagement by, or representation of the entity Defendant, Plaintiff has been damaged in an amount according to proof at trial.

80.     Plaintiff would not have been so damaged, but for the failure of the entity Defendant to exercise due care in the hiring and continued supervision of Nackley.

81.     The entity Defendant had a legal duty to use due care to ensure that its or their agents performed their duties in accordance with law.

82.     Defendants breached those duties, by, at minimum

- falling short of the duty owed Plaintiff, by hiring and allowing Nackley to act in the manner of a supervisor in sexual advances,

- allowing the Defendants to engage in sham, cover-up "investigation,"

- allowing the Plaintiff to be defamed, both before and after her wrongful termination, and

- allowing the illegal firing of Plaintiff itself, in despicable disregard of her career and physical and emotional well-being.

83.     Such breach of duties by Defendants were the proximate cause of injury, including financial and other damage, to Plaintiff.

84.     Said Defendants, by virtue of, at minimum, said negligent supervision, and their conspiratorial behavior, are therefore liable for the acts of each other, and Plaintiff's resultant damages, under the doctrine of respondeat superior and otherwise.

85.     As a part of her damages in this negligence action, Plaintiff also seeks damages for serious emotional distress, caused by Defendants, per, at minimum, Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, at p. 928.

86.     In respect of the serious emotional distress aspect, Plaintiff is or should be entitled to punitive damages as well.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

### CAUSE OF ACTION 7

### NEGLIGENT FAILURE TO ADHERE TO PUBLIC POLICY
(Plaintiff Against All Defendants)

87.     Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

88.     Defendants owed a duty to Plaintiff, inter alia, to treat its claimed "partner" fairly.

89.     Defendants also owed a duty, even a fiduciary duty, to Plaintiff, in that

Defendants claimed that Plaintiff was also a partner (to which fiduciary duties are owed), to adhere to fairness expressed in and as a matter of public policy.

90.     Defendants breached these duties as recounted herein.

91.     These breaches were the proximate cause of damages to Plaintiff, for which Plaintiff seeks recompense herein.

92.     In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

93.     As a part of her damages in this negligence action, Plaintiff also seeks damages for serious emotional distress, caused by Defendants, per, at minimum, Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, at p. 928.

94.     In respect of the serious emotional distress aspect, Plaintiff is or should be entitled to punitive damages as well.

95.     Plaintiff is entitled to punitive and other damages, in an amount according to proof at trial.

96.     Plaintiff is therefore entitled to damages, including punitive damages, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

### CAUSE OF ACTION 8

### BREACH OF IMPLIED CONTRACT
(Plaintiff Against All Defendant Employer)

97.     Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

98.     Plaintiff and Defendants entered into an implied in fact agreement, which included, but was not limited to, the following terms and conditions:

      a.  Plaintiff would not be required to dispense sexual favors to sexual predator managers;

      b.  Plaintiff would not be subjected to defamation and harassment;

      c.  Plaintiff would be able to continue her employment with Defendant

employer indefinitely as long as she carried out her duties in a proper and competent manner;

    d.  Plaintiff would not be denied fair treatment or be terminated for other than good cause;

    e.  Defendant employer's policy would prohibit them from terminating employees for sham performance reviews and without prior counseling employees;

    f.  Defendant employer would not make false statements of facts against Plaintiff and ruin her career.

99.    This employment agreement was evidenced by various written documents including employee handbook, personnel policies, and discipline procedures, and oral representations to Plaintiff by Defendant employer HR business partners and employees.

100.   There was an established policy maintained Defendant employer known to Plaintiff and relied on by her that employees such as Plaintiff, who had performed services as good and faithful employees, would be treated fairly, would not have employment decisions made without good cause, and would not be subjected to defamation and intentional/negligent inference with economic relations.

101.   Plaintiff performed well during the nearly four years that she worked with Defendants. Defendants praised her performance and supported her transfer. During her work with Nackley's group, she received increased responsibilities.

102.   As a result of the above representation, Plaintiff came reasonably to expect and to rely on the promise of job security and fair treatment.

103.   Plaintiff did all, or substantially all, of the significant things that said contracts required her to do, or Plaintiff was excused from doing those things.

104.   All conditions in these contracts for performance to be required had occurred or were excused. (There were no excuses for Defendants' lack of full performance.)

105.   Defendants failed to do something that the contract required them to do [or]

106.   Defendants did something that the contract prohibited them from doing.

107.   Plaintiff was harmed by the breaches of these contracts.

108.   Defendants' conduct was a substantial factor in causing the harm.

109. Defendants' conduct caused Plaintiff s damage, for which Plaintiff seeks recompense herein.

110. Plaintiff thereby, at minimum, sues Defendants and each of them for breaches of contract, as well.

111. In doing the things recounted herein, Defendants, and each of them, acted individually and in conspiracy.

112. Plaintiff is therefore entitled to damages in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 9

### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING
(Plaintiff Against All Defendants)

113. Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

114. Implied in every contract is a "covenant of good faith and fair dealing."

115. The breaches of implied contract alleged in this Complaint also constitute breaches of the implied covenant of good faith and fair dealing by Defendants. Said covenant of good faith and fair dealing required defendants to fairly, honestly, and reasonably perform the terms and conditions of said agreement.

116. Defendants breached said implied covenant of good faith and fair dealing by denying Plaintiff a work environment free from harassment, discrimination, and defamation.

117. Defendants denied her promotions, pay raises, and bonuses that Plaintiff had earned by making up false allegations of fact and sham performance reviews of her.

118. Defendants wrongfully terminated Plaintiff by creating untrue facts and making false statements as allegations of fact in order to protect a more senior employee – sexual predator.

119. Defendants have failed to conduct any reasonable investigation concerning their

obligations under said contract.

120.   Defendants, until present, have failed to correct records, apology, provide a reference or references recounting and documenting good, at minimum, performance – that Plaintiff had clearly earned.

121.   Defendants continue to defame her, and bar her from being rehired in California, despite Defendants' hiring for the same Portfolio Manager position, as Plaintiff held with entity Defendant, in California.

122.   Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and intentional/negligent inference with prospective economic relations.

123.   Defendants' conduct caused Plaintiff damage, for which Plaintiff seeks recompense herein.

124.   Defendants' conduct was a substantial factor in causing that harm.

125.   Plaintiff thereby, at minimum, sues Defendants and each of them for breach of this covenant, as well.

126.   In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

127.    Plaintiff is therefore entitled to damages, including punitive damages, in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 10

### BREACH OF FIDUCIARY OBLIGATIONS
(Plaintiff Against All Defendants)

128.   Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

129.   Plaintiff was owed a fiduciary duty by the employer because it acted like and

purported to be a fiduciary in re its "family of employee partners."

130. Employers should be held to their Balderdash Supreme.

131. The breaches of fiduciary duty have been extensively chronicled in this Complaint.

132. These breaches included, but were not limited to the firing itself, including continuing to defaming her, ruining her career, and intentional/negligent inference with economic relations.

133. By these acts and practices, Defendants and each of them, acting individually and in conspiracy with the other Defendants, damaged Plaintiff, financially, physically, and emotionally.

134. Plaintiff thereby, at minimum, sues Defendants and each of them for breach of fiduciary duties.

135. In doing the things recounted herein, said Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

136. Plaintiff is therefore entitled to punitive and other damages in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.


## CAUSE OF ACTION 11

### FRAUD/MISREPRESENTATION
(Plaintiff Against All Defendants)

83. Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

84. Defendants perpetrated multiple species of fraud against the Plaintiff, including:

    a. Intentional Misrepresentation;

    b. Concealment;

    c. False Promise;

d.      Opinions as Statements of Fact; and

e.      Misrepresentations Made to Persons Other Than the Plaintiff.

85.      The Plaintiff reasonably relied upon Defendants' material misstatements, misrepresentations, omissions, concealments, and the like.

228.      These deceitful misstatements, omissions, concealments, and the like, were proximate causes of the injuries and damages to Plaintiff.

229.      They included, inter alia:

230.      Intentional Misrepresentation

a.      Said intentional misrepresentations included that Defendants would protect employees from sexual harassment in the workplace.

b.      That Defendants were and would remain good citizens, who would not unlawfully or tortiously act as they did to/toward Plaintiff.

c.      That Defendants made false statements and promises inducing Plaintiff to transfer.

231.      Concealment

a.      That Defendants would wrongfully fire a sexual harassment victim and impede her right to litigate in a court of law -- and in order to protect the more senior employee.

b.      That Defendants would make up untruthful facts and false allegations to wrongfully terminate her, would intentionally leave false materials and statements in her personal fill to harm her reputation and would continue to defame her and destroy her career.

c.      That Defendants were not and would not remain good citizens, who would not unlawfully or tortiously act as they did to/toward Plaintiff.

232.      False Promise

a.      That Defendants would not fire a sexual harassment victim, impede her right to litigate in a court of law, and impede her attempts to gain subsequent employment, by, inter alia, allowing adverse inferences to be drawn against her.

b.      That Defendants were and would remain good citizens, who would not

1     unlawfully or tortiously act as they did to/toward Plaintiff.

2 233.   Opinions as Statements of Fact

3     a.     That Defendants would not fire a sexual harassment victim, impede her

4         right to litigate in a court of law, and bar her from attempting to gain

5         subsequent employment, by, inter alia, publishing false allegations of fact

6         to be drawn against her.

7 234.   Misrepresentations Made to Persons Other Than the Plaintiff

8     a.     That Defendants would not fire a sexual harassment victim, impede her

9         right to litigate in a court of law, and bar her from attempting to gain

10         subsequent employment, by, inter alia, publishing false allegations of fact

        to be drawn against her.

11     b.     That Defendants were and would remain good citizens, who would not

12         unlawfully or tortiously act as they did to/toward Plaintiff.

13 235.   Defendants' conduct was a substantial factor in proximately causing the harm,

14 including financial, emotional, and physical damage.

15 236.   Defendants' conduct caused Plaintiff damage, for which Plaintiff seeks

16 recompense herein.

17 237.   Plaintiff therefore, at minimum, sues said Defendants, and each of them, for each

18 and/or all of the above species of fraud, as well.

19 238.   In doing the things recounted herein, Defendants, and each of them, acting

20 individually and in conspiracy, acted with malice, oppression, or fraud, and said acts

21 were approved and/or ratified by each remaining Defendant.

22 239.   Plaintiff is therefore entitled to punitive and other damages in an amount

according to proof at trial.

23 WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in

24 this Complaint.

25

26 **CAUSE OF ACTION 12**

27 **COMMON LAW PROMISSORY FRAUD/PROMISSORY**

28 **ESTOPPEL/FRAUDULENT INDUCEMENT**

1    (Plaintiff Against All Defendants)

2    240.    Plaintiff incorporates by reference, as though here set forth in full, the other

3    paragraphs of this Complaint.

4        "'The elements of a promissory estoppel claim are "(1) a promise clear and
5        unambiguous in its terms; (2) reliance by the party to whom the promise is made;
         (3) [the] reliance must be both reasonable and foreseeable; and (4) the party
6        asserting the estoppel must be injured by his reliance." . . .'"  (Advanced Choices,
         Inc. v. State Dept. of Health Services (2010) 182 Cal.App.4th 1661, 1672)
7

8    241.    Defendants' conduct satisfied each element of these wrongful torts, including

9    promissory fraud and fraudulent inducement, by which Defendants wrongfully induced

10   Plaintiff to enter into employment, because they knew what they were promising would

11   not or would be unlikely to hold true.

12   242.    The promises, including implicit promises, were as of the above.

13   243.    Defendants' conduct was a substantial factor in proximately causing the harm,

     including financial, emotional, and physical damage.

14   244.    Defendants' conduct caused Plaintiff damage, for which Plaintiff seeks

15   recompense herein.

16   245.    Plaintiff therefore, at minimum, sues said Defendants, and each of them, for the

17   above torts or other violations of law, as well.

18   246.    In doing the things recounted herein, Defendants, and each of them, acting

19   individually and in conspiracy, acted with malice, oppression, or fraud, and said acts

20   were approved and/or ratified by each remaining Defendant.

21   247.    Plaintiff is therefore entitled to punitive and other damages in an amount

22   according to proof at trial.

23   WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in

24   this Complaint.

25                          **CAUSE OF ACTION 13**

26                        **EQUITABLE RELIEF FOR**
                          **PROMISSORY FRAUD/**
27                        **PROMISSORY ESTOPPEL/**
                          **FRAUDULENT INDUCEMENT**
28

(Plaintiff Against All Defendants)

248.    Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

> "'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." . . .'"  (Advanced Choices, Inc. v. State Dept. of Health Services (2010) 182 Cal.App.4th 1661, 1672)

249.    Defendants' conduct satisfied each element of these wrongful torts, including promissory fraud and fraudulent inducement, by which Defendants wrongfully induced Plaintiff to enter into employment, because they knew what they were promising would not or would be unlikely to hold true.

250.    The promises, including implicit promises, were as of the above.

251.    Defendants' conduct was a substantial factor in proximately causing the harm, including financial, emotional, and physical damage.

252.    Defendants' conduct caused Plaintiff damage, for which Plaintiff seeks recompense herein.

253.    Plaintiff therefore, at minimum, sues said Defendants, and each of them, for the above torts or other violations of law, as well – and sets forth this cause of action if there is no adequate remedy at law in this matter, under relevant law.

254.    In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

255.    Plaintiff is therefore entitled to punitive and other damages in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 14

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

1    (Plaintiff Against All Defendants)

2    256.   Plaintiff incorporates by reference, as though here set forth in full, the other
3    paragraphs of this Complaint.

4    257.   Contractual interests were impaired by Defendants' false statements of
5    fact/defamatory statements about Plaintiff which, because they adversely affected her
6    reputation, and caused her to be terminated.

7    258.   Defendants violated law from preventing interference with employment by threat
8    or force.

9    259.   Defendants' conduct as recounted herein damaged Plaintiff's business – including
10   her ability to work as a contractor in her finance business in California - for which
11   Plaintiff seeks recompense herein.

12   260.   In doing the things recounted herein, Defendants, and each of them, acting
     individually and in conspiracy, acted with malice, oppression, or fraud, and said acts
13   were approved and/or ratified by each remaining Defendant.

14   261.   Plaintiff therefore, at minimum, sues Defendants and each of them for such harm.

15   262.   Plaintiff is therefore entitled to damages, including punitive damages, in an
16   amount according to proof at trial.

17   WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in
18   this Complaint.

19
20                          **CAUSE OF ACTION 15**

21                   **HARM TO BUSINESS REPUTATION/**
                 **INTENTIONAL INTERFERENCE WITH PROSPECTIVE**
22                   **ECONOMIC RELATIONS/ADVANTAGE**
                        (Plaintiff Against All Defendants)
23

24   263.   Plaintiff incorporates by reference, as though here set forth in full, the other
25   paragraphs of this Complaint.

26   264.   Defendants defamed Plaintiff by, Inter alia, creating and allowing the inference
27   that Plaintiff's performance while in the employ of Defendants did not warrant a

28

reference or references recounting and documenting good, at minimum, performance – that Plaintiff had clearly earned.

265. Defendants defamed Plaintiff by, Inter alia, placing false materials and making false statements as allegations of facts in her personal file, intentionally damaging her career.

266. Plaintiff has applied for more than 900 jobs and has been working on a contractual basis post-termination. She is ineligible for rehire, despite Defendants' hiring for the same Portfolio Manager position, as Plaintiff held with entity Defendant, in California.

267. Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and intentional inference with prospective economic relations.

268. Defendants knew or should have known that, especially for a female professional above 40, that was a killer for one having to seek a comparable or better job. This has ruined her career.

269. Plaintiff was in business - as a finance professional.

270. Defendants should be estopped from asserting she was not in such business – because, inter alia, they held their employees out as "partners" in the business of banking.

271. Moreover, Plaintiff, a Master's Degree holder in finance, was indeed, in a large sense, in the business of finance – whether or not also in the business of being an employee of Defendants as a means of conducting her finance business.

272. Defendants' conduct as recounted herein damaged Plaintiff's business – including her ability to work as a contractor in her finance business in California- for which Plaintiff seeks recompense herein.

273. In doing the things recounted herein, Defendants, and each of them, acting individually and in conspiracy, acted with malice, oppression, or fraud, and said acts were approved and/or ratified by each remaining Defendant.

274. Plaintiff therefore, at minimum, sues Defendants and each of them for such harm.

275. Plaintiff is therefore entitled to damages, including punitive damages, in an

amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in this Complaint.

## CAUSE OF ACTION 16

### HARM TO BUSINESS REPUTATION/
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE
### ECONOMIC RELATIONS/ADVANTAGE
#### (Plaintiff Against All Defendants)

276.    Plaintiff incorporates by reference, as though here set forth in full, the other paragraphs of this Complaint.

277.    Defendants defamed Plaintiff by, Inter alia, creating and allowing the inference that Plaintiff's performance while in the employ of Defendants did not warrant a reference or references recounting and documenting good, at minimum, performance – that Plaintiff had clearly earned.

278.    Plaintiff was terminated in such a manner as to be stigmatizing to her reputation and by Defendants' fabricated, untruthful charges against her.

279.    Defendants defamed Plaintiff by, Inter alia, placing false materials and making false statements as allegations of facts in her personal file, intentionally damaging her career.

280.    Plaintiff has applied for more than 900 jobs and has been working on a contractual basis post-termination. She is ineligible for rehire, despite Defendants' hiring for the same Portfolio Manager position, as Plaintiff held with entity Defendant, in California.

281.    Defendants also required applicants for the Portfolio Manager position in California answer whether they have ever been involuntarily terminated from any job; this constitutes emotional distress to her and negligent inference with prospective economic relations.

282.    Defendants knew or should have known that, especially for a female professional above 40, that was a killer for one having to seek a comparable or better job. This has

ruined her career.

283.　Plaintiff was in business - as a finance professional.

284.　Defendants should be estopped from asserting she was not in such business –
because, inter alia, they held their employees out as "partners" in the business of
banking.

285.　Moreover, Plaintiff, a master's degree holder in finance, was indeed, in a large
sense, in the business of finance – whether or not also in the business of being an
employee of Defendants as a means of conducting her finance business.

286.　Defendants' conduct as recounted herein damaged Plaintiff's business – including
her ability to work as a contractor in her finance business in California - for which
Plaintiff seeks recompense herein.

287.　In doing the things recounted herein, Defendants, and each of them, acting
individually and in conspiracy, acted with malice, oppression, or fraud, and said acts
were approved and/or ratified by each remaining Defendant.

288.　Plaintiff therefore, at minimum, sues Defendants and each of them for such harm.

289.　Plaintiff is therefore entitled to damages, including punitive damages, in an
amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment on this cause of action as well, as set forth in
this Complaint.

## PUNITIVE DAMAGES

1.　Plaintiff hereby incorporates by reference, as though here set forth in full, the
other paragraphs of this Complaint.

2.　Plaintiff seeks damages plus interest and costs in respect of the above causes of
action and facts.

3.　To punish the wrongdoing of Defendants and to deter such future conduct,
Plaintiff also seeks punitive damages with respect to those causes of action that allow
same, in that Defendants engaged in their despicable conduct as against Plaintiffs with
malice, oppression, or fraud.

-　　"Malice" means that Defendants acted with intent to cause injury or that

Defendants' conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

- "Oppression" means that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiffs' rights.

- "Fraud" means that Defendants intentionally misrepresented or concealed a material fact and did so intending to harm Plaintiff.

- "Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as against all Defendants, jointly and severally, as follows:

1.    For damages according to proof;

2.    For punitive damages;

3.    For a finding that Defendants and their attorneys had no probable cause to defend this lawsuit;

4.    For interest on the amount of each item of damages at the legal rate from the date each item of damage took place;

5.    Plaintiff seeks injunctive relief, including:

      a.  Prohibiting false advertising and other statements to the effect that the entity Defendant is a good citizen or the like;

      b.  Prohibiting false advertising and other statements to the effect – or implying - that the entity Defendant treats employees fairly or the like;

      c.  Prohibiting direct, indirect, or implied defamation even after an employee is illegally terminated.

6.    For costs of suit incurred herein, including reasonable attorney fees; and

7.   For such other and further relief as this Court deems just and appropriate.

Dated: June 22, 2017

Respectfully submitted,


*Xiaoyan Tang*

XIAOYAN TANG
Plaintiff

P. O. Box 92
Menlo Park, CA 94026
Soareagles@gmail.com

(617) 319-3126